## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSE MORALES, #M52533, | ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 18-CV-1116-NJR ) |
| DR. VIPIN, JOHN/JANE DOE, JEFF DENNISON, C/O BRIDGEWELL, WARDEN DUNKIN, WARDEN KINK, and JOHN DOE, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Jose Morales, an inmate of the Illinois Department of Corrections ("IDOC") currently housed at Western Illinois Correctional Center filed this *pro se* action on May 15, 2018. (Doc. 1). Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 pertaining to his prior incarceration at Lawrence Correctional Center ("Lawrence"). According to the Complaint, officials at Lawrence failed to properly treat Plaintiff for Human Papillomavirus ("HPV").

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

## THE COMPLAINT

In December 2015, when Plaintiff was incarcerated at Lawrence, he began seeking treatment for genital warts. (Doc. 1, p. 6). He was not referred to a physician, however, until August 29, 2016. *Id*. By that time, Plaintiff's genital warts had "turned black and had changed." (Doc. 1, p. 7).

On September 15, 2016, Plaintiff was examined by Dr. Vipin.[1] *Id.* Plaintiff showed Dr. Vipin his genital warts and said "I've had this problem for two years." (Doc. 1, p. 11). Plaintiff told Dr. Vipin he thought he was suffering from herpes or HPV. (Doc. 1, pp. 7, 11). Dr. Vipin did not order any testing or refer Plaintiff to a specialist. *Id*.

Eventually, in April 2017, Plaintiff was referred for testing. (Doc. 1, p. 7). At that time, an unspecified individual "noted that Plaintiff's warts were worsening and turning colors badly." *Id.* Although testing was ordered in April 2017, the testing did not actually take place until July 2017. *Id.* According to the Complaint, "defendants doctors" and "the health care administrator" received Plaintiff's test results on or before July 5, 2017. The Complaint does not expressly state what type of testing was performed or the results of those tests, but an exhibit attached to the Complaint indicates that Plaintiff was informed he had HPV. (Doc. 1, p. 10).

On August 10, 2017, "defendant doctor" attempted to remove the warts. (Doc. 1, p. 7). He performed the procedure himself because it cost too much to send Plaintiff to an outside specialist. *Id*. During the procedure, the "doctor" cut Plaintiff too deeply and the wound required "a stitch." *Id*. Plaintiff was in excruciating pain, but "defendant doctor" did not give him any pain medication. *Id*.

---

[1] Plaintiff has named "Dr. Vipin" as a defendant. Plaintiff's claims pertaining to the September 15, 2016 visit are directed at the "defendant doctor" and "Shah." An exhibit attached to the Complaint indicates that Plaintiff was examined by "Doctor Vipin Shah" on September 15, 2016 and requested treatment for genital warts. (Doc. 1, p. 22). Taken together, the Court finds that the allegations pertaining to the September 15, 2016 examination are directed against the defendant Plaintiff has identified as "Dr. Vipin."

On August 13, 2017, the stitching broke, causing bleeding and severe pain. (Doc. 1, p. 8). Plaintiff could see "the white, meat flesh beneath the skin," and he asked Correctional Officer Bridgewell to send him to the healthcare unit for emergency treatment and pain medication. *Id.* That request was denied. *Id.*

On August 17, 2017, Plaintiff's stitch was removed. *Id.* Plaintiff does not know "what the doctor did to him or whoever this doctor was," but he continues to have pain in his penis and has trouble urinating. *Id.* Plaintiff also states that he "saw more than one doctor" and that "he is not sure who is exactly who, but knows that the doctor defendants worked there." (Doc. 1, p. 9).

Plaintiff claims he wrote letters to the "warden" and "previous warden" regarding "this is[sue] as well as on the issue of delayed, needed tests and treatment." (Doc. 1, p. 7). Additionally, after Plaintiff's stitching broke, Plaintiff submitted "emergency requests" and/or letters seeking medical treatment to the healthcare unit, healthcare unit administrator, and warden. *Id.* Plaintiff's correspondence was not answered. (Doc. 1, p. 8). Finally, Plaintiff claims that "Defendants John Doe Warden and the Health Care Administrator Duncan" violated their duties by failing to ensure that health care staff were following policies and providing proper medical care to inmates. *Id.* Plaintiff also claims that Defendants failed to properly treat him for HPV in retaliation for the "complaints and grievances he wrote." (Doc. 1, p. 6).

### DISMISSAL OF CERTAIN DEFENDANTS

Plaintiff has identified John/Jane Doe Health Care Administrator, Warden Kink, and Warden Dunkin as defendants. The body of the Complaint, however, does not direct any claims against "John/Jane Doe Health Care Administrator," "Warden Kink," or "Warden Dunk." Plaintiff does assert claims against individuals with similar titles (e.g., "the warden," "the previous warden," "John Doe Warden," and "Health Care Administrator Duncan."), but this is

insufficient. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). For this reason, John/Jane Doe Health Care Administrator, Warden Kink, and Warden Dunkin shall be dismissed from the action without prejudice.

Plaintiff also has identified John Doe Doctor/John Doe Doctor #2 as a defendant.[2] This individual is subject to dismissal for the same reason. The body of the Complaint does not include any allegations directed against "John Doe Doctor" or "John Doe Doctor #2." The Complaint includes several allegations directed against "defendant doctor" and "doctor." (Doc. 1, pp. 7-8). These claims may relate to a single physician (possibly the physician that removed Plaintiff's genital warts on August 10, 2017), but that is not entirely clear. (*See* Doc. 1, p. 9) ("Plaintiff saw more than one doctor. He is not sure who is exactly who."). Further, the Court cannot simply presume that claims directed against an unspecified doctor are associated with John Doe Doctor/John Doe Doctor #2 (as opposed to Dr. Vipin or additional physicians not named as defendants).[3] Given this ambiguity, Defendants would be unable to properly answer the Complaint. As such, John Doe Doctor/John Doe Doctor #2 shall be dismissed from the action without prejudice.

---

[2] In his list of defendants, Plaintiff identifies John Doe Doctor as a defendant. In the case caption, however, Plaintiff identifies this individual as John Doe Doctor #2.
[3] There is one exception. As explained above, the Court finds that the claim directed against "defendant doctor" pertaining to Plaintiff's medical visit on September 15, 2017, is associated with the defendant Plaintiff has identified as Dr. Vipin.

## DESIGNATION OF COUNTS

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit. Any claims not addressed in this Order should be considered dismissed without prejudice from this action.

**Count 1:** Eighth Amendment deliberate indifference claim against Dr. Vipin for failing to treat Plaintiff's genital warts or to conduct diagnostic tests, thus delaying diagnosis and proper treatment for his condition.

**Count 2:** Eighth Amendment deliberate indifference claim against Correctional Officer Bridgewell for denying Plaintiff medical treatment when his stitching burst.

**Count 3:** First Amendment retaliation claim against Defendants for withholding medical care as retaliation for Plaintiff's complaints and grievances.

## MERITS REVIEW UNDER § 1915(A)

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that (1) he suffered from an objectively serious medical condition; and (2) the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable

measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff's symptoms from his HPV infection constituted an objectively serious condition that required medical attention. Plaintiff also has alleged that Dr. Vipin responded with deliberate indifference to that condition by failing to treat his symptoms or to order any diagnostic testing. Accordingly, Count 1 shall receive further review as to Dr. Vipin.

**Count 2**

Plaintiff alleges that, after surgery, his stitching burst, causing bleeding and severe pain. He also claims Correctional Officer Bridgewell refused his requests for medical treatment. This is sufficient, at the screening stage, to allow Count 2 to proceed as to Correctional Officer Bridgewell. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (deliberate indifference is manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed").

**Count 3**

Plaintiff generally claims that he was denied medical care because of complaints and grievances he submitted. Plaintiff's conclusory allegation, which is directed generically at all defendants, is insufficient. It does not demonstrate that any particular defendant took action to deter Plaintiff's protected First Amendment conduct. Instead, Plaintiff merely labels the alleged denial of medical care as "retaliation." Such statements are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555; *Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009). *See also Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985) (noting that "alleging

merely the ultimate fact of retaliation is insufficient"). Accordingly, Count 3 shall be dismissed from the action without prejudice.

## PENDING MOTIONS

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is referred to United States Magistrate Judge Donald G. Wilkerson for disposition

## DISPOSITION

**IT IS HEREBY ORDERED** that **JOHN/JANE DOE, DUNKIN, KINK,** and **JOHN DOE** are **DISMISSED** from the action without prejudice for failure to state a claim.

**IT IS FURTHER ORDERED** that **COUNT 1** shall **PROCEED** against **VIPIN** and **COUNT 2** shall **PROCEED** against **BRIDGEWELL**.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED without prejudice** for failure to state a claim.

**IT IS FURTHER ORDERED** that, as to **COUNTS 1** and **2**, the Clerk of Court shall prepare for **VIPIN** and **BRIDGEWELL**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendants' place of employment. If any Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that the Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings, including disposition of Plaintiff's Motion for Recruitment of Counsel. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  June 13, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**